UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL HOGAN,

       Plaintiff,

v.                                                    Case No. 3:23-cv-60-MMH-PDB

CHRISTINA CREWS,

       Defendant.

_____

**<u>ORDER</u>**

**I. Status**

Plaintiff Michael Hogan, an inmate in the custody of the Florida
Department of Corrections (FDC), initiated this action by filing a pro se Civil
Rights Complaint (Complaint; Doc. 1)[1] with exhibits (Doc. 1-1) pursuant to 42
U.S.C. § 1983. Hogan names three Defendants: (1) Dr. Elliot Perez-Lugo; (2)
Assistant Warden Christina Crews; and (3) Health Service Administrator
S. Geiger. <u>See</u> Complaint at 2. Crews is the only remaining Defendant in this
action.[2] Hogan alleges that Crews was deliberately indifferent to his serious

---

[1] For all pleadings and documents filed in this case, the Court cites to the
document and page numbers as assigned by the Court's Electronic Case Filing
System.

[2] Hogan voluntarily dismissed his claims against Geiger, <u>see</u> Order (Doc. 36),
and the Court dismissed Hogan's claims against Dr. Perez-Lugo after reasonable
efforts to locate him proved unsuccessful, <u>see</u> Order (Doc. 45).

medical needs in violation of the Eighth Amendment, see id. at 9, and requests declaratory relief and monetary damages, see id. at 10–11.

This matter is before the Court on Crews's Motion to Dismiss (Motion; Doc. 41). Hogan filed a response in opposition to the Motion. See "Plaintiff's Oposition [sic] to Defendant[']s Motion to Dismiss Case" (Response; Doc. 47). Hogan also submitted exhibits. See Docs. 47-1 through 47-23. The Motion is ripe for review.

## II. Hogan's Allegations[3]

As to the specific facts underlying his claim, Hogan alleges that on June 14, 2021, he broke a bone in his right forearm. Complaint at 2. He asserts that on June 29, 2021, the FDC orthopedic surgeon, Dr. Winters, "verified the break and ordered [Hogan] to return and receive treatment in 4–6 weeks." Id. at 3. Dr. Winters also issued "a handfull [sic] of pain medication, sling, and brace to keep his arm from flexing." Id. However, the FDC transported Hogan to Columbia Correctional Institution (Columbia CI) on August 5, 2021, before he could follow up with Dr. Winters. Id.

---

[3] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Hogan, and accept all reasonable inferences that can be drawn from such allegations. Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved. Additionally, because this matter is before the Court on Crews's Motion, this section details the factual allegations pertinent to her.

At Columbia CI, Hogan asserts that when he notified staff about his broken arm, they advised him to submit a sick call request. Id. According to Hogan, he placed multiple sick calls about his broken arm and requested a sling, brace, or cast,[4] to no avail. Id. Hogan alleges Dr. Perez-Lugo never saw him during this time. Id. He asserts that on September 29, 2021, he "was called to sick-call and an x-ray was ordered"; however, he did not receive a sling, brace, cast, or pain medication. Id. at 4. The next day, Hogan had an x-ray, which showed his bone was still broken. Id.

According to Hogan, he "placed numerous sick calls over the next several months that were not seen, even though Dr. Perez[] had full knowledge of the request by Dr. Winters[] for a follow up and x-rays verifying that plaintiff's arm was not healing." Id. He asserts that on February 4, 2022, he submitted a grievance to the Columbia CI Warden about this issue. Id. Assistant Warden Crews and Dr. Perez-Lugo responded to the grievance, stating that Hogan "was seen at sick-call and scheduled to see Dr. Perez soon." Id. By March 23, 2022, Hogan still had not seen Dr. Perez-Lugo, so he filed another grievance about the denial of medical care. Id. at 5. Crews responded that "[t]hey were properly treating him and he was scheduled to see Dr. Perez soon." Id. (internal quotation marks omitted). On April 5, 2022,

---

[4] Hogan alleges that staff at another correctional institution took his sling and brace "shortly before transfer to Columbia Annex." Complaint at 3.

Hogan again grieved the denial of medical treatment to the Columbia CI Warden, but Crews and Dr. Perez-Lugo denied the grievance. Id. at 6.

On April 26, 2022, Dr. Perez-Lugo saw Hogan. Id. Hogan informed Dr. Perez-Lugo about Dr. Winters's recommendation; however, Dr. Perez-Lugo stated he wanted to order an x-ray. Id. The next day, Hogan had an x-ray which showed that his arm was still broken. Id. According to Hogan, he subsequently filed two grievances about a follow-up visit to Dr. Perez-Lugo, but Crews and Dr. Perez-Lugo denied the grievances. Id. at 7.

Finally, on August 5, 2022, Hogan saw Dr. Winters at the Reception and Medical Center. Id. Dr. Winters "complained" about Hogan not returning for a follow-up. Id. Hogan "had to now have surgery[,] a bone graph [sic] and permanent metal plating due possibly to [him] not getting proper support for his arm letting it contin[u]ously flex keeping the bone from mending." Id. Dr. Winters ordered immediate transport for surgery. Id. "[Hogan] was again never transported nor had [he] been called to medical." Id. On September 22, 2022, Hogan submitted a grievance to the Columbia CI Warden, and Crews responded that "paperwork has been submitted for transport but waiting on approval." Id.

Hogan alleges that as of October 20, 2022, he "has still not been transfered [sic] for surgery." Id. at 8. Hogan asserts he "has gone through this year and a half with a fully broken right arm that flexes and sags and pops in

4

and out of place with any pressure." Id. He also experiences "excruciating pain." Id. Hogan argues that Crews "has had full knowledge of this and has the power to order these staff to treat [him] yett [sic] she refused this treatment or care herself." Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw

5

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v.

<u>Cnty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Summary of the Arguments

Crews seeks dismissal of the Complaint on the basis that: (1) Hogan fails to state a deliberate indifference claim; (2) she cannot be held liable under a theory of respondeat superior; and (3) she is entitled to qualified immunity. <u>See</u> Motion at 4–11. In addition, Crews asserts that Hogan's request for punitive damages is statutorily barred. <u>Id.</u> at 11–15.

Hogan responds that he states a plausible deliberate indifference claim against Crews because "there is more than a possibility that . . . Crews had full knowledge of [Hogan's] injuries and did nothing to help [Hogan] with treatment." <u>See</u> Response at 3. Hogan also argues that Crews can be held liable under a theory of respondeat superior, Crews is not entitled to the benefit of qualified immunity, and he is entitled to punitive damages. <u>Id.</u> at 5–15.

## V. Analysis

## 1. Extrinsic Evidence

With his Response, Hogan includes a "Statement of Disputed Factual Issues" as well as exhibits consisting of his sworn declaration, grievance records, medical passes, and various prison rules and regulations. <u>See</u> Response at 16–17; Docs. 47-2 through 47-23. Apart from some grievance

records that Hogan attached to his Complaint and now resubmits with his Response, the documents are outside the four corners of the Complaint. When a party moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and matters outside of the pleadings are presented to and not excluded by the court, the motion is ordinarily treated as if it were a motion for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d); see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). Nevertheless, the Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, 600 F.3d at 1337. The Court, in its discretion, declines to consider any documents beyond those which comply with the above exceptions, and thus, will not convert the Motion to a motion for summary judgment. See Harper v. Lawrence Cnty., 592 F.3d 1227, 1232 (11th Cir. 2010).

Insofar as Hogan attempts to amend his Complaint with these additional exhibits, his attempt is improper. He may not amend his Complaint by raising additional factual allegations in a response to a motion to dismiss. See Fed. R. Civ. P. 7(b); see also Dorman v. Aronofsky, 36 F.4th 1306, 1317 (11th Cir. 2022) ("[F]acts contained in a motion or brief 'cannot

8

substitute for missing allegations in the complaint.'" (quoting <u>EEOC v. Catastrophe Mgmt. Sols.</u>, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016))).

## 2. Deliberate Indifference to Medical Care

Hogan alleges Crews violated the Eighth Amendment when she was deliberately indifferent to his broken arm. <u>See</u> Complaint at 9. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. <u>Swain v. Junior</u>, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing <u>Farmer</u>, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate

9

indifference to that serious medical need. See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); see also Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024). Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in criminal law. See Wade, 106 F.4th at 1253. Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].

> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Id. at 1262 (enumeration and emphasis omitted).[5]

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding

---

[5] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Moreover, the Eleventh Circuit has held that "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." <u>Keith v. DeKalb Cnty.</u>, 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

<u>Mathews v. Crosby</u>, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting <u>Cottone</u>, 326 F.3d at 1360).

12

In the Motion, Crews argues that Hogan "fails to prove that [she] acted with deliberate indifference toward [his] [] serious medical need, and [Hogan] fails to prove harm suffered as a result of these alleged actions or inactions." Motion at 6. First, Crews contends that as a corrections employee, she did not personally participate in the treatment of Hogan's injury. Id. Crews further asserts that it appears Hogan merely disagrees with the decisions made by Crews regarding dates of appointments and scheduling issues; however, mere disagreements regarding care are insufficient to state a claim for relief. Id. at 6–7. Finally, Crews argues that Hogan has not pled facts sufficient to establish supervisory liability under 42 U.S.C. § 1983. Id. at 7–9.

Hogan responds that in the Complaint, he details a significant delay in treatment for a serious medical need, and as such, he states a plausible claim for relief. See Response at 5–7. He further contends that his grievances demonstrate Crews had knowledge that he was denied medical care; therefore, she may be held liable as a supervisor. Id. at 8.

The Court determines that Hogan fails to state a claim for relief against Crews.[6] Hogan does not allege that Crews was directly involved in his medical care. Rather, the only allegations with respect to Crews are that

---

[6] In the Motion, Crews presents her failure to state a deliberate indifference claim and failure to demonstrate supervisory liability as separate arguments. However, because the Court determines Hogan's claim against Crews is premised only on a theory of supervisory liability, it will address Crews's arguments in that context.

she denied Hogan's grievances about the lack of medical care he received at Columbia CI, and in doing so, she failed to correct her subordinates' unconstitutional behavior. However, not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (unpublished) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

The Eleventh Circuit has recognized circumstances in which a defendant's failure to act in response to an inmate's grievances amounts to a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327–29 (11th Cir. 2007) (finding that a defendant's failure to act in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of

14

miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit determined that the inmate's written complaint contained sufficient information so that defendant "had a duty to look into the matter." Id. And the defendant's failure to investigate or inquire into the matter merely because he did not believe the inmate amounted to deliberate indifference. Id. at 1329.

The facts of this case do not resemble those in Goebert. Whereas the defendant in Goebert completely disregarded his duty to investigate the inmate's time-sensitive serious medical complaints, Crews considered and addressed Hogan's complaints. See Doc. 1-1 at 7–8, 10–11, 13–14, 23–28. For instance, in response to Hogan's grievance concerning the delay in medical care for his broken arm, Crews responded in part:

> [R]eviewed records indicate that you were seen by the orthopedic in June of 2021. A follow-up x-ray was completed on November 10, 2021. You were also seen for this issue in sick call on March 18, 2022 and have a follow up appointment scheduled with the clinician.

Doc. 1-1 at 8. The response is dated April 8, 2022, see id., and as Hogan concedes in the Complaint, he saw Dr. Perez-Lugo on April 26, 2022, see

15

Complaint at 6.[7] On the two occasions Crews returned Hogan's grievances without action, she noted he had previously filed a grievance addressing the same issue, which she had responded to, and identified the previous grievance. See id. at 10, 11. These responses reflect that Crews inquired into the matter and did not "deliberately disregard, without any investigation or inquiry," Hogan's complaints. Goebert, 510 F.3d at 1328.

Moreover, Hogan's grievances reflected that staff had provided some medical care. Although Hogan requested to visit a doctor and to receive a wrap, cast, or brace, he also stated that he had received multiple x-rays, and he had attended sick calls regarding the issue. See Doc. 1-1 at 24–28. Therefore, taking Hogan's allegations as true, he does not sufficiently allege Crews was subjectively aware that her own conduct in denying his grievances caused a substantial risk of serious harm to Hogan. As such, the Motion is due to be granted based on Hogan's failure to state a claim for relief.[8]

_____

[7] The remaining grievance responses on the merits reflect officials made similar inquiries into the record medical care. See Doc. 1-1 at 7 ("Further investigation reveals the following information: You have been seen at Sick Call and your chart has been referred to the Doctor regarding this."), 13 ("Record review indicates that [you] were seen by the orthopedist on 8/5/22."), 14 ("Record review indicates that you have been seen and evaluated by the orthopedist and surgery was recommended. The appropriate paperwork has been submitted and is awaiting approval.").

[8] Because the Court finds that Hogan fails to state any claim against Crews, it need not address Crews's assertions that she is entitled to qualified immunity and that punitive damages are statutorily barred.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1.     Defendant Christina Crews's Motion to Dismiss (Doc. 41) is **GRANTED**. Plaintiff Michael Hogan's claims against Crews are **DISMISSED with prejudice**.

2.     Hogan's Motion to Appoint Counsel (Doc. 53) and Motion to Compel a Response (Doc. 56) are **DENIED as moot**.

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 9/12
c:     Michael Hogan, #V21612
        Counsel of record

17